# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                          )
**WILSON MALDONADO and**                  )
**MILAGROS MALDONADO,**                    )
                                          )
     **Plaintiffs,**                   )      **Civil Action Nos.**
                                          )      **11-40044-FDS**
     **v.**                             )      **11-40219-FDS**
                                          )
**AMS SERVICING LLC, EQUIFIRST**           )
**CORP., and MORTGAGE ELECTRONIC**         )
**REGISTRATION SYSTEMS, as nominee,**      )
                                          )
     **Defendants.**                   )
_____)

### AMENDED MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO LIFT TEMPORARY RESTRAINING ORDER, DEFENDANTS' MOTIONS TO DISMISS, AND MOTIONS FOR RECONSIDERATION

**SAYLOR, J.**

This action arises from a lender's allegedly improper refusal to modify a home loan following the borrower's default. In September 2008, plaintiffs Wilson and Milagros Maldonado defaulted on their home mortgage loan. The assignee then holding the mortgage initiated foreclosure proceedings. Since then, plaintiffs have filed two complaints in Massachusetts Superior Court, alleging violations of the Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93A, § 2 and the Predatory Home Loan Practices Act, Mass. Gen. Laws ch. 183C, §§ 3-4.

Plaintiffs' first action was filed in state court on January 19, 2011. The court in that proceeding granted an *ex parte* temporary restraining order ("TRO") and preliminary injunction barring foreclosure. The case was then removed to this Court on February 28, 2011. On October 31, 2011, this Court vacated the TRO and preliminary injunction and granted in part motions to

dismiss filed by defendants.

On November 21, 2011, plaintiffs, represented by new counsel, filed a second lawsuit in state court and obtained another *ex parte* TRO and preliminary injunction, also barring foreclosure proceedings.  It does not appear that the state court was advised of the existence of the other lawsuit.  Defendant AMS Servicing LLC removed that action the next day.  On December 8, 2011, this Court vacated the preliminary order issued by the state court and consolidated the two actions.

Now pending before the Court are two motions for reconsideration.  In the first, defendant Equifirst seeks reconsideration of the partial denial of its previous motion to dismiss.   In the second, plaintiffs seek reconsideration of the order vacating the state court injunction and consolidating the actions.

In the wake of this unusual procedural history, this Court will amend its memorandum and order of October 31.  In this amended order, the motion of Equifirst for reconsideration will be granted and all claims against it dismissed for failure to state a claim.  The motion of plaintiffs for reconsideration of the December 8 orders will be denied.  Plaintiffs will also be given an opportunity to amend their second complaint to the extent they do not raise issues or claims precluded by this order and to respond to counterclaims raised by defendant AMS.

I.      **Background**

The facts are stated in the light most favorable to plaintiffs.[1]

On August 18, 2005, Wilson and Milagros Maldonado entered into a loan agreement with

---

[1] The following background is amended to reflect facts from an enlarged record following the submission of the second complaint as well as the answer of defendant AMS and exhibits submitted by defendants with their motions to dismiss.

New Century Mortgage Corporation, secured by a mortgage on their home on Burncoat Terrace in Worcester, Massachusetts.  (Second Compl. ¶ 5 and Ex. D; Answer Ex. A).  On December 11, 2006, they negotiated a new home loan and mortgage with EquiFirst Corporation.  (First Compl. ¶¶ 4-6, EquiFirst Mot. Ex. A).  That mortgage was granted to the Mortgage Electronic Registration Systems ("MERS"), as nominee for EquiFirst, and recorded on December 15, 2006. (AMS Mot. Ex. B).  The terms of the Equifirst loan provided that interest would accrue at 7.950 percent for a two-year introductory term, after which the interest rate would be adjusted every six months to a rate 5.560 percent above the six-month LIBOR index rate as published in the Wall Street Journal, rounded to the nearest eighth, subject to a ceiling of 10.950 percent and a floor of 7.950 percent in the first six-month term.  (*Id.* Ex. A).[2]  MERS assigned its interest in the mortgage to TCIF, LLC, effective September 15, 2008.  (*Id.* Ex. C).

Plaintiffs defaulted on their loan on an unspecified date.[3]  On December 9, 2008, the servicing company for the loan, HomEq Servicing, notified the Maldonados that the interest rate for the first six-month variable rate term would be 8.125 percent.  (*Id.* Ex. K).  On June 5, 2009, AMS sent a letter to the Maldonados explaining that it had been assigned the right to collect payments by HomEq and that it would service the loan beginning on July 1, 2009.  (*Id.*).

Shortly thereafter, on July 9, 2009, TCIF obtained a judgment in the Massachusetts Land Court under the Servicemembers Civil Relief Act.  On October 20, 2009, it notified the Maldonados of its intent to foreclose.  (*Id.* Ex. D, E).  TCIF originally scheduled a foreclosure

---

[2] The LIBOR (London Interbank Offered Rate) rate is "the British Bankers' Association average of interbank offered rates for dollar deposits in the London market."  The Wall Street Journal, Market Data Center - Money Rates, http://online.wsj.com/mdc/ public/page/2_3020-moneyrate.html (last visited Oct. 12, 2011).

[3] Defendant AMS asserts in its brief that the default occurred on September 16, 2008.  (AMS Mot. at 2).

sale for November 20, 2009.  (*Id.*).  That sale never occurred, and, on April 7, 2010, TCIF

assigned its interest in the mortgage to DB50-2007-1 Trust, an entity also not joined in this

action.  (*Id.* Ex. F, G).

On May 18, 2010, the Maldonados sent a demand letter to AMS Servicing.  (First Compl.

¶ 12 and Ex. A).  The letter asserted that the loan (or any future foreclosure) was (or would be) in

violation of (1) the Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93A, § 2; (2)

the Massachusetts Predatory Home Loan Practices Act, Mass. Gen. Laws ch. 183C, §§ 3-4; and

(3) various federal disclosure laws.  (*Id.*).  The letter also requested that AMS stay any pending

foreclosure proceedings and negotiate a modification of the Maldonados' loan obligations.  (First

Compl. ¶ 13; Second Compl. Ex. B).  AMS denied these allegations of unlawful conduct.  (AMS

Hr'g Ex. A).  In October 2010, AMS also made an oral offer to modify the loan according to

terms that the Maldonados found unacceptable.  (First Compl. ¶¶ 14-15).  On December 21,

2010, DB50-2007-1 Trust notified the Maldonados of its intent to foreclose on the property and

to conduct a foreclosure sale on January 21, 2011.  (AMS Mot. Ex. H).

On January 19, 2011, the Maldonados brought suit against defendants in the

Massachusetts Superior Court, alleging violations of Mass. Gen. Laws ch. 93A, § 2, and Mass.

Gen. Laws ch. 183C, §§ 3-4.  The complaint also asserted that defendants had violated United

States Department of Treasury regulations applicable to the loan due to defendants' participation

in the Home Affordable Modification Program ("HAMP").  (First Compl. ¶¶ 19-25).  The

Superior Court issued an *ex parte* temporary restraining order on January 20, 2011, prohibiting

defendants from conducting the planned foreclosure sale.  (State Ct. R.).  After a hearing, it

issued a preliminary injunction to the same effect on February 14, 2011.  (*Id.*)

Defendants removed the action to this Court on February 28, 2011, pursuant to 28 U.S.C. § 1441 and on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  Defendant EquiFirst filed a motion to dismiss the claims against it under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, which was granted in part and denied in part on October 31.  Defendants AMS and MERS filed motions to lift the preliminary relief granted by the state court and to dismiss the action under Rule 12(b)(6), which were granted in the same order.

On November 21, 2011, the Maldonados filed a second complaint in Massachusetts Superior Court.  (AMS Mot to Vacate Ex. R).  The complaint asserted three counts against AMS (but no other defendants) for violating Mass. Gen. Laws ch. 93A, § 2 by (1) extending a loan that was "presumptively unfair" under *Commonwealth v. Fremont*, 452 Mass. 733 (2008); (2) failing to consider a loan modification as required by HAMP Supplemental Directives 09-01 and 10-05; and (3) failing to consider loan modification as required by HAMP Directive 10-01.  (Second Compl.¶¶ 19, 23, 30).  On November 22, the state court entered an *ex parte* temporary restraining order and preliminary injunction prohibiting AMS from proceeding with its planned foreclosure. It does not appear that the state court was informed of the pendency of the first action.

AMS removed the second action to this Court on November 22, 2011.  On December 8, its motion to vacate the state court injunction and consolidate the new action with the first one was granted.  The property was foreclosed on and sold on December 9, 2011.  (Answer at 8 ¶ 5). AMS has since filed an answer to the complaints that asserts counterclaims for contract damages and for a judgment of possession and execution.

Meanwhile, defendant Equifirst filed a motion for reconsideration of the partial denial of its motion to dismiss.  The Maldonados have now filed a motion for reconsideration of the order

vacating the second state court injunction and consolidating these cases.  This amended order will first address the motions considered in the October 31 order and then proceed to the procedural posture of the claims between the Maldonados and AMS.

## II.   Motions to Dismiss

### A.   Standard of Review

The evaluation of a motion for reconsideration brought pursuant to Fed. R. Civ. P. 60(b) is "committed to the district court's sound discretion."  *Stonkus v. City of Brockton Sch. Dept.*, 322 F.3d 97, 100 (1st Cir. 2003).  The rule provides several grounds for relief from a judgment or order, including "mistake, inadvertence, surprise, or excusable neglect," and "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(1), (6).  Motions under this rule are ordinarily granted only when exceptional circumstances are present, but "district courts have broad discretion to determine whether such circumstances exist."  *Ahmed v. Rosenblatt*, 118 F.3d 886, 891 (1st Cir. 1997).  The contours of Rule 60(b)(6), the "catch-all" provision, are "particularly malleable," and the Court's "decision to grant or deny such relief is inherently equitable in nature."  *Ungar v. PLO*, 599 F.3d 79, 83, 84 (1st Cir. 2010).

Here, Equifirst seeks reconsideration of a motion to dismiss.  On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint

are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).  "The plausibility standard is not

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550

U.S. at 556).  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft

to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84

(1st Cir. 2008) (quotations and original alterations omitted).

## B.      Claim under Chapter 183, Section 28C

Neither complaint mentions Chapter 183, § 28C of the Massachusetts General Laws.[4]  In

their brief, defendants AMS and MERS nonetheless interpret the first complaint to allege that

defendants have violated ch. 183, § 28C.  Because that claim has not been properly raised or

supported, it will be dismissed as to all defendants.

## C.      Claims under Chapter 183C, Sections 3 and 4

The first complaint alleges violations of Mass. Gen. Laws ch. 183C, §§ 3 and 4.[5]  Section

3 states that "[a] creditor may not make a high-cost home mortgage loan without first receiving

certification from a counselor . . . that the borrower has received counseling on the advisability of

the loan transaction." *Id.* § 3.  Section 4 provides that "[a] lender shall not make a high-cost

home mortgage loan unless the lender reasonably believes at the time the loan is consummated

that 1 or more of the obligors . . . will be able to make the scheduled payments to repay the home

---

[4] That section provides that "[a] lender shall not knowingly make a home loan if the home loan pays off all or part of an existing home loan that was consummated within the prior 60 months or other debt of the borrower, unless the refinancing is in the borrower's interest."  Mass. Gen. Laws ch. 183, § 28C(a).

[5] The complaint does not differentiate among the defendants.  However, because Chapter 183 concerns the liabilities of creditor who makes the home loan, rather than subsequent holders of the debt, the Court assumes that these claims are asserted against Equifirst.

loan . . . ."  *Id.* § 4.  A violation of either section also constitutes a *per se* violation of Chapter 93A.  *Id.* § 18(a).

Defendant Equifirst has moved to dismiss the Chapter 183C claim on the ground that the loan at issue is not a "high-cost home loan" as defined by the statute and therefore is not subject to either Section 3 or Section 4.  For purposes of Chapter 183C, a first-lien home-mortgage loan is a "high-cost home mortgage loan" when "the annual percentage rate at consummation will exceed by more than 8 percentage points . . . the yield on United States Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the lender."  Mass. Gen. Laws ch. 183C, § 2.[6]

The first step, therefore, in evaluating the loan at issue is to determine the highest APR the loan at issue could have without becoming a "high-cost home mortgage loan" under the statute.  That statutory threshold is calculated by identifying the yield on United States Treasury securities for bonds of comparable maturity at the relevant time and adding 8 percentage points.  The loan was a 30-year mortgage approved on December 11, 2006.  (EquiFirst Mot. Ex. A).  Assuming that the loan application was made in November 2006, during the weeks before its execution, the applicable date for determining the Treasury rate would be October 13, the Friday proceeding Sunday, October 15, 2006.  On that date, the nominal Treasury security rate for a thirty-year bond was 4.94 percent.  *See* Board of Governors of the Federal Reserve System, Selected Interest Rates (Daily) - H.15, http://www.federalreserve.gov/releases/h15/data.htm (last visited Oct. 12,

---

[6] A loan may also qualify as a "high-cost home mortgage loan" if "the total points and fees exceed the greater of 5 per cent of the total loan amount or $400[, adjusting for inflation.]" *Id.*  The Chapter 93A demand letter that explains plaintiffs' claims under § 183C does not assert such a claim.  (First Compl. Ex. A).

2011).[7]  At the time of the loan, the threshold for the statute to apply was therefore an APR that

is eight percentage points above 4.94 percent, or 12.94 percent.[8]

The second step in evaluating the applicability of Chapter 183C is to determine whether

the loan had an annual percentage rate ("APR") greater than that threshold.  The statute requires

that, for adjustable rate loans, the APR should be calculated based on "the interest rate that would

be effective once the introductory rate has expired."  Mass. Gen. Laws ch. 183C, § 2.  The loan

document defined that rate as the LIBOR rate plus a margin of 5.560 percent.  (Equifirst Mot. Ex.

A).  On December 11, 2006, when the loan was executed, the six-month LIBOR rate was 5.324

percent.  (Wall Street Journal Money Rates, Equifirst Reconsideration Mot. Ex. D).  The

applicable index rate was therefore 10.884 percent.  Using that rate to calculate the loan's APR

yields a rate of 11.0743 percent.  (Equifirst Ex. F).[9]

Plaintiffs' demand letter states that the statutory threshold for a "high-cost home mortgage

loan" at the relevant time was an APR of 11.72 percent and that the actual "ceiling rate" for their

loan was 14.7 percent.  However, plaintiffs do not explain the analysis that yields these figures

and do not provide the documentation on which it was based.  Nor do they offer any legal

---

[7] Generally, a court may take judicial notice under Fed. R. Ev. 201 of the Treasury security rates as information "capable of accurate and ready determination."  *See Katz v. Katz*, 55 Mass. App. Ct. 472, 474 (2002).

[8] The parties do not indicate the date of the loan application, so it may have occurred prior to November; if it did, an earlier date would apply in finding the relevant treasury bond rate.  However, that fact appears to be immaterial, because the rates for each of the six months prior to the 2006 loan approval date were never below 4.69.  Thus, whenever the application was made within that period, the statutory threshold would never have fallen below 12.69 percent.  That threshold would lead to the same result found here.

[9] Equifirst provides a calculation computed using software provided by the Office of the Comptroller of the Currency of the United States Treasury.  United States Office of the Comptroller of the Currency, Annual Percentage Rate Calculation Program for Windows (APRWIN), available at http://www.occ.treas.gov/tools-forms/ tools/compliance-bsa/aprwin-software.html.  This Court takes judicial notice of the results of this government-provided calculator.  *See, e.g., Smith v. Homecoming Financial*,  2010 WL 3943839, at *3 (W.D.N.C. 2010) (finding calculator maintained by the Federal Bureau of Labor Statistics to be "inherently reliable").

authority for using the "ceiling rate" of a loan instead of its calculated APR.

Thus, the statutory threshold for a "high-cost home mortgage loan" in this context was 12.94 percent, while the actual APR for loan at the time of execution of the agreement was 11.074 percent.  The loan was not a "high-cost home mortgage loan," and the complaint therefore does not state a claim under Mass. Gen. Laws ch. 183C, §§ 3 and 4.

### D.   Claims under Chapter 93A Against EquiFirst

Plaintiffs' first complaint also alleges that defendant EquiFirst violated Mass. Gen. Laws ch. 93A, § 2 by issuing a loan of a "predatory nature."  EquiFirst has moved to dismiss that claim as time-barred by the applicable statute of limitations, Mass. Gen. Laws ch. 260, § 5A.

Chapter 93A, the Massachusetts consumer-protection law, is subject to a four-year limitations period.  Mass. Gen. Laws ch. 260, § 5A.  The general rule is that a cause of action under Chapter 93A accrues "when the plaintiff knew or should have known of appreciable harm resulting from the defendant's [actions]."  *Schwartz v. Travelers Indem. Co.*, 50 Mass. App. Ct. 672, 678 (2001).  The "discovery rule" delays accrual beyond the time of injury if the plaintiff does not know and could not reasonably know that he or she "may have been harmed by the conduct of another."  *Prescott v. Morton Intern., Inc.*, 769 F. Supp. 404, 408 (D. Mass. 1990). The discovery rule is narrow, generally applying only where the harm itself is "inherently unknowable."  *Saenger Org., Inc. v. Nationwide Ins. Licensing Assoc., Inc.*, 119 F.3d 55, 65 (1st Cir. 1997); *see also Catrone v. Thoroughbred Racing Ass'n of N. Am, Inc.*, 929 F.2d 881, 886 (1st Cir. 1991).

Here, plaintiffs claim the benefit of the discovery rule, arguing that their cause of action did not accrue when the allegedly illegal loan was made, but rather when they became aware of

the loan's "predatory nature" through a legal analysis completed in 2010.  (Pl. Opp. at 2).

Plaintiffs' reliance on the discovery rule is misplaced.  The fact that plaintiffs did not have the loan

"analyzed" for several years is irrelevant, given that the facts constituting the alleged violation

would have been evident from the loan documentation.

Because any violation of Chapter 93A would not have been "inherently unknowable" at

the time of the loan, the Chapter 93A cause of action accrued when the loan was made on

December 11, 2006.  The limitations period expired four years later, on December 11, 2010.

Plaintiffs brought suit in state court on January 19, 2011, more than four years after the loan was

issued.  Their Chapter 93A claim is therefore time-barred by Mass. Gen. Laws ch. 260, § 5A.

### E.    Claims under Chapter 93A Against AMS and MERS

The first complaint also alleges that the refusal of defendants AMS and MERS to consider

a loan modification in good faith violated Mass. Gen. Laws ch. 93A, § 2.  Chapter 93A prohibits

"[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any

trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a).  The allegations in the complaint

emphasize defendants' non-compliance with HAMP as either evidence or proof of a Chapter 93A

violation.  The Court finds that neither the alleged violations of HAMP nor any other allegation in

the first complaint suffices to state a claim under Chapter 93A.

The Secretary of the Treasury announced the "Making Home Affordable Program" in

February 2009.  It aims to provide relief to borrowers who have defaulted or are likely to default

by encouraging lenders to reduce mortgage payments to sustainable levels without discharging

any of the underlying debt.  *See* U.S. Dep't of the Treasury, Supplemental Directive 09-01,

*available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf.

11

Under HAMP, loan servicers are provided with a $1,000 incentive payment for each permanent mortgage-loan modification completed.  These modifications proceed under a uniform process designed to identify eligible borrowers and render their debt obligations more affordable and sustainable.  The Department of the Treasury has issued a series of directives that provide guidance to participant servicers for implementing HAMP.  *See id.*

Here, plaintiffs allege that defendants' failure to comply with the Treasury Department directives constitutes a violation of Chapter 93A.  In response, defendants insist that any alleged violation of HAMP is insufficient to establish a claim under Chapter 93A.  Both positions erroneously focus on the existence and effect of any HAMP violation, instead of applying the Chapter 93A standard itself, which prohibits conduct that is "unfair or deceptive."  A HAMP violation itself does not provide a private cause of action to the borrower, although it may provide the basis of a violation of Chapter 93A.  *Ording v. BAC Home Loans Servicing, LP*, 2011 WL 99016, at *7 (D. Mass. 2011) (collecting cases); *Kozaryn v. Ocwen Loan Servicing, LLC*, 2011 WL 1882370, at *2 (D. Mass.) (2011).  Notwithstanding the possibility of overlap between HAMP and Chapter 93A violations, it is also clear that violation of a federal regulation or statute such as HAMP is neither sufficient nor necessary to establish a Chapter 93A claim.  *Morris v. BAC Home Loans Servicing, L.P.*, 775 F. Supp. 2d 255, 259 (D. Mass. 2011); *see also Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 66 (1st Cir. 2009) ("To prove [a Chapter 93A] claim, it is neither necessary nor sufficient that a particular act or practice violate common or statutory law.") (citing *Kattar v. Demoulas*, 433 Mass. 1, 12-13 (2000)).

In *Ording*, the court held that whether conduct constituting a HAMP violation also gives rise to a Chapter 93A claim depends on (1) whether there a HAMP violation, (2) whether the

violation consists of conduct that would be independently actionable under Chapter 93A, and (3) whether, if the conduct is actionable, recovery under Chapter 93A is consistent with the objectives and enforcement mechanisms of HAMP. *Ording*, 2011 WL 99016, at *7. In *Morris*, the court resolved the third of these factors, determining that Chapter 93A recovery is consistent with HAMP. 775 F. Supp. 2d at 260-262. As between the two remaining factors, the second is the logical focus of the inquiry.[10] Thus, this Court must determine whether plaintiffs have alleged facts that are independently actionable under Chapter 93A.

As noted, Chapter 93A provides a cause of action where a business engages in "unfair or deceptive acts or practices." Conduct is "deceptive" for purposes of Chapter 93A when it has "the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 394 (2004). What constitutes "unfair" conduct has never been explicitly defined. *See Fernandes v. Havkin*, 731 F. Supp. 2d 103, 116 (D. Mass. 2010); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 93 (D. Mass. 2007) (noting that "whether an act is unfair or deceptive is best discerned from the circumstances of each case" (citation and internal quotation marks omitted)). However, "Massachusetts courts have . . . enumerated several factors to be considered when determining whether a practice is unfair." *Id.* Those factors are: "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or

---

[10] Indeed, the first step appears unnecessary. If it means only that a HAMP violation that violates Chapter 93A must be a HAMP violation, it is superfluous. If it means that conduct related to a HAMP transaction must violate the federal regulations in order to violate Chapter 93A, it is inconsistent with the repeated statements by other courts that a technical violation of another law is not a necessary element of a Chapter 93A claim.

unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." *Mass. Eye & Ear*, 552 F.3d at 69 (citation and internal quotation marks omitted); *see also Jasty v. Wright Medical Tech., Inc.*, 528 F.3d 28, 38 (1st Cir. 2008) ("[A] plaintiff's conduct, his knowledge, and what he reasonably should have known may be factors in determining whether an act or practice is unfair." (quoting *Swanson v. Bankers Life Co.*, 389 Mass. 345, 349 (1983)).

It is conceivable that these factors may render a lender's refusal to modify a loan in accordance with HAMP "unfair" under Chapter 93A in some circumstances. Nonetheless, the first complaint does not set forth the kind of circumstances where the lender's refusal to modify is either "deceptive" or "unfair." The only factual allegations are (1) that defendants offered a modification subject to a fee that the Maldonados believed was too high, and (2) that the high volume of other troubled loans serviced by defendant precluded full consideration of plaintiffs' modification request. (First Compl. § 15-16). Without further facts showing actual deception or unfairness, the complaint does not state a claim that rises to the level of a Chapter 93A violation.

This conclusion accords with that of the decision in *Morris*. *Morris* involved allegations that a lender did not "timely provide the appropriate notifications" and offered "a non-HAMP modification agreement." 775 F. Supp. at 263. The court concluded that these allegations did not demonstrate "unfairness, as opposed to minor delay or trivial clerical flaws." *Id.* Plaintiffs' claim in this case likewise rests largely on allegations that defendants delayed consideration of modification. This Court agrees that mere delay in business matters, without more, is not normally "unfair" within the meaning of Chapter 93A. Plaintiffs' additional argument that defendants' modification offer was unacceptably high, without more, is likewise insufficient to

14

raise the claim to the level of a 93A violation.

Because the first complaint does not allege "unfair or deceptive" conduct, the Chapter 93A claims will be dismissed as to all defendants.[11]

### E.      Standing to Enforce Mortgage

The first complaint also asserts that MERS lacks standing to foreclose on the property subject to the mortgage because the loan note has been assigned to third parties.  That position is contrary to Massachusetts law.  In Massachusetts, a mortgage does not automatically follow the note it secures, and a mortgage and its associated note may be held by separate parties.  *United States Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637, 652-53 (2011).  Courts specifically addressing MERS's particular system of administering mortgages have held that "MERS may both foreclose and assign mortgages held in its name," even though it does not hold the notes.  *Rosa v. Mortgage Electronic Systems, Inc.*, 2011 WL 4381191, *3-4  (D. Mass. 2011) (quoting *In re Marron*, 455 B.R. 1, 5-6 (D. Mass. 2011) (collecting cases)).  When MERS assigns a mortgage to an entity that participates in its mortgage tracking system, the beneficial interest passes to the assignee, but MERS remains the nominee and mortgagee of record, and therefore may itself seek foreclosure.  *See Jackson v. MERS, Inc.*, 770 N.W.2d 487, 490 (Minn. 2009).

## III.    Motion to Lift TRO/Preliminary Injunction

Defendants have also filed a motion to lift the TRO and preliminary injunction imposed by the state court in response to the first complaint.

### A.      Standard of Review

---

[11] Because AMS has not moved to dismiss the counts in the second complaint, the Court does not decide their viability here.

Entitlement to a preliminary injunction requires that the movant demonstrate that (1) the movant has a substantial likelihood of success on the merits, (2) the movant bears a significant risk of irreparable harm if the provisional relief is withheld, (3) the balance of equities is in its favor, and (4) the granting of the injunction will not adversely affect the public interest. *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003). The demonstration of some probability of success is a "critical factor" in this analysis. *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991).

**B.    Analysis**

Here, the Court's analysis begins and ends with the probability-of-success factor. Plaintiffs' first complaint contains only 24 paragraphs, half of which state mere legal conclusions that are unsupported by factual allegations. Plaintiffs appended just one exhibit to their complaint, their demand letter, which is only marginally more factually specific. As discussed, this sparse pleading does not even survive a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009) (stating that although legal conclusions "can provide the complaint's framework, they must be supported by factual allegations."). It certainly does not establish a reasonable probability of success.

Ordinarily, the fact that the claims of the first complaint are dismissed would render the issue of preliminary relief moot.[12] Here, it remains necessary to address the issue because the action will continue by virtue of counterclaims raised by AMS and the claims raised by plaintiffs in the second complaint. Nothing in the latter pleading, however, alters this Court's determination

---

[12] In the October 31 order of this Court, one of plaintiffs' claims survived the motions to dismiss, necessitating inquiry into whether to vacate the preliminary injunction of the state court.

16

that plaintiffs have not shown a likelihood of success.  The second complaint contains three

counts.  The first count, against AMS, asserts a Chapter 93A claim based on alleged predatory-

lending practices similar to those alleged against Equifirst in the first complaint and dismissed here

as time-barred.  The statute of limitations is likely to bar the new claim, which is based on an

even-earlier loan transaction.[13]  The remaining counts of the second complaint raise Chapter 93A

claims based on an alleged failure to modify plaintiffs' loan obligations in violation of federal

HAMP regulations.  These claims appear identical to the claims asserted against AMS and MERS

in the first complaint, and are likely barred by the doctrine of claim preclusion.

   As set forth below, plaintiffs will have an opportunity to amend their second complaint to

state any viable claims not precluded by the dismissal of their first complaint.  At this stage,

however, the Court cannot discern any significant likelihood that plaintiffs will succeed with their

claims.  *See Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991) ("Likelihood of

success cannot be woven from the gossamer threads of speculation and surmise.").  Accordingly,

the TRO and preliminary injunction issued by the state court in response to the first complaint will

be vacated.

---

[13] Moreover, the claim appears to lack merit.  The second complaint alleges that AMS extended a loan to plaintiffs on August 18, 2005, and that predatory aspects of the loan violate Chapter 93A.  (Second Compl. ¶¶ 5, 18-21).  However, the loan documentation itself indicates that the lender was New Century Mortgage Corporation, not AMS.  (Second Compl. Ex. D).  Plaintiffs cannot revive their claims against AMS by attributing a different loan transaction to the company in contradiction of the loan documentation itself.  *See Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir.1998) ("[w]hen . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

## IV.     Motion for Reconsideration of Order of Vacating TRO and Preliminary Injunction and Consolidating Cases

In support of its motion for reconsideration, counsel for plaintiffs asserts that he was not served with the motion by counsel for AMS, who did not mail it to the office address listed on the state court complaint.  Furthermore, because he was not admitted to practice before this Court until December 13, plaintiffs' counsel states that he was unable to receive notice of the emergency motion through the Court's electronic filing system.  Without service or notice, he contends, proper opposition to defendant's motion was impossible.

With respect to the vacating of the second state court injunction, plaintiffs' motion is moot because the foreclosure that would be enjoined has already occurred.  Plaintiffs may have claims for damages and a defense to defendant's counterclaim for possession of the property in question. However, because this order dismisses all of plaintiffs' original claims raised in their first complaint, any claims or defenses remaining in this action that challenge the legality of defendants' conduct will be precluded to the extent that they raise claims that "either were or could have been asserted in a prior action based on the same transaction."  *Cruz Berrios v. Gonzalez-Rosario*, 630 F.3d 7, 14 (1st Cir. 2010).[14]

With respect to consolidation, plaintiffs' motion is irrelevant because the consolidation of actions involving a common question of law or fact is within the discretion of the court.  Fed. R. Civ. P. 42(a).  Once the second action was properly removed, this Court had authority to

---

[14] Although "the issue of whether state or federal law should govern a federal court's determination of the *res judicata* effect of an arbitral award is one that has not been much developed, *FleetBoston Fin. Corp. v. Alt*, 638 F.3d 70, 79 (1st Cir. 2011) (internal citations and quotation marks omitted), the question is inconsequential because Massachusetts and federal courts apply the doctrine in the same manner, *see O'Neill v. City Manager of Cambridge*, 428 Mass. 257, 259 (1998) ("Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents re-litigation of all matters that were or could have been adjudicated in the action.") (internal citations and quotation marks omitted).

consolidate the actions *sua sponte* or without the parties' consent.  *See* 9A Wright & Miller, Federal Practice and Procedure § 2383 (3d ed. 2008).  Here, the two actions are nearly identical, and the presence or absence of plaintiffs' briefs would not affect the decision to consolidate.

The consolidation of these actions necessarily creates an awkward procedural posture in which plaintiffs appear to be re-litigating claims that are seemingly identical to those previously dismissed but in which that issue has not squarely been briefed.  The presence of new counterclaims and the existence of affirmative claims in the second complaint will presumably require further briefing.  Accordingly, plaintiffs will be granted a reasonable time to amend their complaint to clarify which claims, whether among those in the second complaint or others, they assert are not precluded at this stage.

**IV.   Conclusion**

For the foregoing reasons,

1.   the motion of AMS and MERS to dismiss is GRANTED with respect to all counts of the first complaint;

2.   the motion of defendant Equifirst to reconsider the partial denial of its motion to dismiss is GRANTED, and its motion to dismiss is GRANTED as to all plaintiffs' claims against it;

3.   the motion of AMS to lift the preliminary injunction issued by the state court in response to the first complaint is GRANTED;

4.   the motion of plaintiffs for reconsideration of the orders vacating the state court TRO and preliminary injunction and consolidating these actions is DENIED; and

5.   within 21 days, plaintiffs may amend their complaint or file responsive pleadings to

the counterclaims raised by defendant AMS; provided, however, that plaintiffs may

not raise claims or issues that are precluded by this order.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  January 24, 2012